# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| BREAKTHROUGH INNOVATIONS, LLC | ) ) ) | **COMPLAINT** |
| **Plaintiff,** | ) ) | **CIVIL ACTION NO. 2:25-cv-13070** |
| **v.** | ) ) | **JURY TRIAL DEMANDED** |
| DIAMEDICAL USA EQUIPMENT, LLC | ) ) ) | |
| **Defendant.** | ) | |

NOW COMES Plaintiff BREAKTHROUGH INNOVATIONS, LLC ("Plaintiff" or "BTI"), by and through its undersigned counsel, and hereby files its Complaint against Defendant DIAMEDICAL USA EQUIPMENT, LLC ("Defendant") for injunctive and monetary relief. Plaintiff alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.     This is an action in which BTI seeks damages and injunctive relief for patent infringement in violation of the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, breach of contract, breach of the covenant of good faith and fair dealing, misappropriation of trade secrets in violation of the federal Defend Trade Secrets

Act ("DTSA"), 18 U.S.C. §§ 1831 *et seq.*; misappropriation of trade secrets in violation of the Michigan Uniform Trade Secrets Act ("MUTSA"), MCL 445.1901 *et seq.*; and for unfair competition under common law, all resulting from the unlawful actions and conduct of Defendant, as set forth herein.

2.     BTI's claims arise out of Defendant's infringement of United States Patent No. 9,916,767 ("the '767 Patent," attached hereto as Exhibit A); breach of the Amended and Restated Distribution Agreement dated April 14, 2023 by and between BTI and Defendant (the "Distribution Agreement," attached hereto as Exhibit B); and associated unlawful actions and conduct.

**THE PARTIES**

3.     Plaintiff BreakThrough Innovations, LLC is a corporation organized and existing under the laws of Ohio with a principal place of business at 3511 South Dixie Dr., Moraine, OH 45439. Founded by first responders and Emergency Medical Services ("EMS") educators, BTI was formed to develop equipment used for teaching rescue techniques to students and professionals in the EMS and healthcare industry, resulting in part in the invention of its vehicle simulator and extrication training system, sold under the brand names "Sweet Extrication Training System" ("SETS") and "SimRescue."

4.     BTI is the owner of the '767 Patent.

5.     Upon information and belief, Defendant DiaMedical USA Equipment, LLC is a Michigan corporation with a principal place of business at 31440 Northwestern Hwy, Suite 150, Farmington Hills MI 48334. Defendant entered into the Distribution Agreement in which Defendant was appointed distributor, and agreed, among other things, to "use its best efforts to solicit and promote the purchase," of BTI's SETS/SimRescue system. Instead, Defendant, during the term of the Distribution Agreement and using BTI's confidential information, developed and manufactured, and immediately after terminating the Distribution Agreement began selling, an infringing and competing extrication training system under the same SimRescue brand, hereinafter the "Accused System." *See* https://www.diamedicalusa.com/SimRescue-Reimagined-The-Auto-Extrication-Trainer.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction over the subject matter of BTI's claims against Defendant pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1367.

7.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

8.     Defendant is subject to personal jurisdiction in this District arising from its acts of infringement occurring in this District.

3

9.     Upon information and belief, Defendant has employees and/or sales representatives in this district that are selling and/or offering for sale the Accused System, has customers using the Accused System in this district, has sales and/or is offering for sale the Accused System in this District, and elsewhere in Michigan.

10.     Upon information and belief, Defendant has made, used, sold, and/or offered for sale the Accused System which infringes the '767 Patent throughout the United States, including in this District.

11.     Upon information and belief, Defendant has purposefully directly infringed the '767 Patent in this District, has contributed to and/or induced customers to use the Accused System in this district, and/or has otherwise availed itself of the privileges and protections of the laws of the State of Michigan, such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and due process.

## FACTUAL BACKGROUND

### BTI's Development of the Patented SETS/SimRescue System

12.     BTI, despite being a small, privately owned company, is a world leader in the research, development, and manufacturing of vehicle simulators and extrication training systems. BTI was founded on a strong foundation of real-world end-user experience as first responders and EMS educators. This firsthand

experience enabled BTI to develop products that effectively addressed unmet needs within the EMS and healthcare industry, including the SETS/SimRescue simulator.

13.     BTI's SETS/SimRescue was developed to provide a solution for practicing vehicle accident scenarios in a clean, safe, and repeatable environment, such as a classroom. It was also designed to be robust enough to allow training in a variety of other environments.

14.     Before BTI's introduction of its SETS/SimRescue in 2013, there were few practical and effective options available for EMS training institutions to simulate vehicle accident scenarios. Instructors were often forced to use makeshift setups such as tables and chairs, take students to a junkyard, or even use their personal vehicles in the facility's parking lot.

15.     BTI's introduction of its SETS/SimRescue transformed the training environment for first responders by providing a reliable platform for practicing patient care, access, and removal in simulated vehicle accident scenarios. Most notably, it enabled standardized, repeatable training—allowing each student to practice and be evaluated under identical conditions. This advancement supported the broader shift toward scenario-based education within the first responder training community.

16.     BTI invested significant time and capital in research and development, marketing (including trade show participation), and grassroots sales efforts to introduce its SETS/SimRescue product. After introduction, SETS/SimRescue received multiple awards and was featured in several trade publications that highlighted its benefits.

**BTI's Valuable Intellectual Property Rights in Its System**

17.     BTI invested considerable resources to securing intellectual property rights related to the SETS/SimRescue system, resulting in the issuance of multiple patents covering the SETS/SimRescue and its unique features, including without limitation the '767 Patent.

18.     On March 13, 2018, the United States Patent and Trademark Office duly issued United States Letters Patent No. 9,916,767 ("the '767 Patent"), entitled "Device and Method For Simulating a Transportation Emergency," to inventor Russell A. Sweet. All right, title and interest in and to the '767 Patent have been assigned to BTI, which is the sole owner of the '767 Patent. A true and correct copy of the '767 Patent is attached hereto as Exhibit A.

19.     BTI also developed certain business information relating to, *inter alia*, the manufacture, marketing, and sale of the SETS/SimRescue system, which BTI has taken reasonable measures to keep secret by, *inter alia*, not disclosing said

6

information without agreement by the recipient not to use or disclose such information without BTI's consent as evidenced, for example, by the strict confidentiality provisions set forth in the Distribution Agreement, as discussed *infra*. BTI also imposes similar confidentiality obligations on its employees, contractors, agents, and third parties, and it implements multiple security measures to ensure compliance with such obligations.

### BTI and Defendant Entered Into the Distribution Agreement

20.     After several years of direct sales, BTI was introduced to Defendant. On or about July 2, 2020, BTI and Defendant entered into an Exclusive Distribution Agreement (the "Original Agreement"), pursuant to which BTI appointed Defendant, and Defendant accepted appointment, as exclusive distributor of BTI's SETS/SimRescue system.

21.     On or about April 14, 2023, BTI and Defendant entered into the Distribution Agreement "to supersede and replace the Original Agreement in its entirety and provide the terms and conditions of the agreement of the parties for Distributor to distribute" BTI's SETS/SimRescue system. (Ex. B at 1.) The Distribution Agreement is governed by Ohio law. (Ex. B ¶ 15.)

22.     The Distribution Agreement provides that "during the Term, [Defendant] will be a provider of all of [BTI's] extrication training systems whether

marketed, advertised and/or promoted as 'Sweet Extrication Training System',
'S.E.T.S.' or under any other name in the Territory and concerning the Products, and
shall be the exclusive distributor for the Products for Exclusive Customers within
the United States." (Ex. B ¶ 3.)

23.     The Distribution Agreement provides that, "[i]n consideration of such
appointment, [Defendant] shall (i) use its best efforts to solicit and promote the
purchase of Products by customers in the Territory (including, without limitation, to
customers other than Exclusive Customers) and to promote increasing sales and use
of the Products in the Territory (including, without limitation, outside of the United
States), consistent with good business practice[.]" (Ex. B ¶ 1.)

24.     The Distribution Agreement also provides that Defendant shall
"showcase [BTI's SETS/SimRescue] at the appropriate conferences at the discretion
and cost of [Defendant]" and "showcase [BTI's SETS/SimRescue] at such
conferences as may be reasonably requested by [BTI], acting in good faith, from
time to time, which shall also be at the cost of [Defendant]." (Ex. B ¶ 27.)

25.     The Distribution Agreement contains a "Confidentiality and Non-
Competition" clause that provides: "Distributor shall at all times before and, for the
maximum period permitted by applicable law, after termination or expiration of this
Agreement, keep confidential and not use or disclose at any time to any unauthorized

third party, except as may be required in connection with Distributor's performance of its obligations under this Agreement, any information which is confidential or proprietary relating to the Company and/or the Products (including, but not limited to, business plans of the Company and technical matters or specifications relating to the Products). During the Term, Distributor shall not, directly or indirectly, represent, sell or promote or assist in the sale or marketing of or otherwise deal commercially in or with any products within or outside of the Territory that will then be in direct or indirect competition with any of the Products." (Ex. B ¶ 28.)

26.    The parties began performing under the Distribution Agreement.

27.    During the term of the Distribution Agreement, BTI disclosed to Defendant confidential information concerning the manufacture, promotion, and sale of the SETS/SimRescue system.

28.    Initially during the term of the Distribution Agreement, with Defendant acting as BTI's exclusive distributor, the parties' business conducted under the Distribution Agreement was mutually successful, in that sales volumes for BTI's SETS/SimRescue system grew. The parties began discussing expanding into new markets.

29.     In furtherance of the foregoing, BTI shared with Defendant a significant volume of confidential information under a non-disclosure agreement in the course of discussions about a possible acquisition of BTI by Defendant.

30.     During the term of the Distribution Agreement, upon information and belief in or about May 2023, Defendant was acquired by Pocket Nurse Enterprises, LLC, resulting in a change in Defendant's management. *See* https://www.healthysimulation.com/pocket-nurse-acquires-diamedical-usa/.

31.     After the change in Defendant's management, discussions concerning a potential acquisition of BTI by Defendant ceased, but BTI continued to share confidential information with Defendant under the terms of the Distribution Agreement.

32.     Beginning in 2025, BTI experienced a noticeable decline in sales and a reduction in communication from Defendant.

## DEFENDANT'S UNLAWFUL CONDUCT

33.     Upon information and belief, Defendant is manufacturing, selling, and/or offering for sale to customers within the United States a device or devices, or kit(s) for device(s), for simulating a transportation emergency, including without limitation products marketed as "SimRescue™ Reimagined – The Auto Extrication Trainer."

34.    Upon information and belief, Defendant is importing into the United States a device or devices, or kit(s) for device(s), for simulating a transportation emergency, including without limitation products marketed as "SimRescue™ Reimagined – The Auto Extrication Trainer."

35.    Defendant's activities constitute infringement, contributory infringement and/or inducement of infringement of the '767 Patent.

36.    Upon information and belief, Defendant has engaged in the conduct described above intentionally, willfully, actively, knowingly and maliciously, in intentional disregard of BTI's patent rights, and with the intention to harm BTI.

37.    More particularly, on or about May 5, 2025, Gillian Peralta, upon information and belief Defendant's Executive Vice President, sent an email message to BTI stating, "DiaMedical is going to move forward with discontinuing the SWEET [sic] extrication training system as part of our product offerings[,]" and further stating, "I would like to give you the option to make the termination of the exclusive agreement effective immediately (5/2/25) for both parties, so that you can find a new distributor. Please confirm if you align with this approach or if you would like to wait the 90 days."

38.    On or about May 13, 2025, BTI responded through counsel (1) "to confirm that [BTI] intends to honor the terms of the Agreement in all respects,

including without limitation Paragraph 7 governing termination, which provides, in pertinent part, that either party may terminate the Agreement 'after first providing 90 days' written notice to the other party.' Agreement ¶ 7. Accordingly, the Agreement shall remain in force and effective through and including 90 days from your May 2, 2025, email message[,]" that is, July 31, 2025; (2) reminding Defendant of its obligations to (i) use its best efforts to promote BTI's SETS/SimRescue system, (ii) showcase BTI's SETS/SimRescue system at the appropriate conferences and such conferences as reasonably requested by BTI, and (iii) to honor the confidentiality and non-competition covenants; and (3) reminding Defendant that BTI's SETS/SimRescue system "is protected by U.S. patent numbers 9,892,651; 9,916,767; and 11,043,137."

39.     BTI stated that it was compelled to issue the foregoing reminder because it had become "concerned that [Defendant] has begun developing, manufacturing, or distributing a product that does or will compete with" BTI's SETS/SimRescue system.

40.     BTI's foregoing concern arose both from Defendants' behavior, as well as information BTI received from third parties concerning Defendant's past pattern of similar conduct relating to third parties.

41.     Consistent with BTI's concerns that, during the term of the Distribution Agreement and after the change in Defendant's management, Defendant began developing the Accused System, Defendant failed to effectively promote BTI's SETS/SimRescue product at the 2025 Accreditcon trade show. In previous years, the parties' course of performance under the Distribution Agreement had been such that Defendant's staff would coordinate with BTI well in advance of a trade show to arrange for shipment of a SETS/SimRescue system unit for display and promotion at a show. In contrast, in advance of the 2025 Accreditcon show—and in the leadup to Defendant's intended introduction of the competing Accused System—Defendant purposefully delayed in contacting BTI to arrange for shipment, such that BTI had to reach out (on May 22, 2025) to inquire whether Defendant intended to attend and have a SETS/SimRescue unit at the 2025 Accreditcon show. On May 22, Defendant responded stating that it would require pickup on May 23 (the next day) or May 27, to be delivered at the show by May 29; BTI immediately responded confirming availability for pickup on May 27. Later on May 22,  Defendant reversed course, stating that it would require pickup on the next day, May 23. When BTI informed Defendant that was not sufficient notice to arrange for pickup, and reasonably requested that Defendant abide by its original proposal of a May 27 pickup, Defendant attempted to force BTI to pay shipping costs, which is Defendant's

responsibility under the Distribution Agreement. When BTI reasonably requested that Defendant honor its obligation under the Distribution Agreement, Defendant refused, and as a result failed to "showcase product at such conferences as may be reasonably requested by Company, acting in good faith, from time to time[.]" (Ex. B ¶ 27.)

42. Upon information and belief, on or about August 4, 2025—immediately after the July 31, 2025, effective date of termination of the Distribution Agreement—Defendant introduced the Accused System.

43. Upon information and belief, Defendant began developing the Accused System during the term of the Distribution Agreement.

44. Upon information and belief, Defendant developed, manufactured and is manufacturing, and is marketing, offering for sale, and selling the Accused System using confidential information of BTI, which BTI disclosed to Defendant pursuant to the Distribution Agreement.

45. Upon information and belief, unless enjoined by this Court, Defendant will continue its unlawful conduct.

## COUNT I
## Patent Infringement

46.    BTI realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

47.    BTI has sought and obtained numerous patents related to its proprietary SETS/SimRescue system, including without limitation the '767 Patent.

48.    BTI owns all right, title, and interest in and to the '767 Patent.

49.    The '767 Patent is valid and enforceable.

50.    Defendant has infringed and continues to infringe, has actively and knowingly induced and continues to actively and knowingly induce infringement of, and/or has contributed to and continues to contribute to acts of infringement of, one or more claims of the '767 Patent through at least Defendant's by making, using, distributing, manufacturing, offering to sell, and/or selling, and/or inducing its customers to use, without limitation, at least the Accused System.

51.    As a direct and proximate result of Defendant's infringement, contributory infringement, and/or inducement of infringement of the '767 Patent, BTI has been and continues to be damaged and irreparably harmed in its business and property, including without limitation the loss of substantial profits in an amount to be determined at trial. Upon information and belief, Defendant's infringement,

contributory infringement, and/or inducement of infringement of the '767 Patent will continue unless enjoined by this Court.

52.     By reason of the above acts, Defendant has caused, is causing, and unless enjoined by this Court, will continue to cause great and irreparable injury to, among other things, the good will and business reputation of BTI and its business relations with its customers, all of which cannot be adequately compensated or measured in monetary terms. BTI has no adequate remedy at law for Defendant's infringement, contributory infringement, and/or inducement of infringement of the '767 Patent. BTI is entitled to injunctive relief enjoining and restraining Defendant, its officers, agents, servants, and employees, acting jointly or severally, and all persons acting in concert with it, and each of them, from further infringement, contributory infringement, and/or inducement of infringement of the '767 Patent .

53.     Upon information and belief, Defendant's infringement, contributory infringement, and/or inducement of infringement of the '767 Patent is, has been, and continues to be willful, with knowledge of the '767 Patent and BTI's rights in and to the '767 Patent, and in willful, wanton, and deliberate disregard thereof, making this an exceptional case under 35 U.S.C. § 285, and BTI is entitled to attorney's fees and costs, and is entitled to an award of treble damages under 35 U.S.C. § 284.

54.     As a direct and proximate result of Defendant's wrongful conduct, BTI has suffered, and will continue to suffer, monetary damages in the amount to be proven at trial.

## COUNT II
## Breach of Contract

55.     BTI realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

56.     BTI and Defendant are parties to the Distribution Agreement.

57.     The Distribution Agreement is a valid and enforceable contract.

58.     BTI performed or substantially performed its obligations under the Distribution Agreement.

59.     Pursuant to Section 28 of the Distribution Agreement, BTI disclosed certain confidential information to Defendant concerning BTI's SETS/SimRescue system.

60.     Upon information and belief, Defendant breached at least Section 28 of the Distribution Agreement by using BTI's confidential information to, during the term of the Distribution Agreement, develop the competing Accused System and, during and/or following the term of the Distribution Agreement, develop,

manufacture, have manufactured, market, offer for sale, and/or sell the Accused System.

61.     Upon information and belief, Defendant breached at least Section 1 of the Distribution Agreement by failing to "use its best efforts to solicit and promote the purchase of" BTI's SETS/SimRescue system "and to promote increasing sales and use of" BTI's SETS/SimRescue system "consistent with good business practice," by, during the term of the Distribution Agreement, at least developing, manufacturing, or having manufactured the Accused System.

62.     Upon information and belief, as a result of Defendant's failure to Defendant breached at least Section 1 and/or Section 27 of the Distribution Agreement by failing to "showcase product at the appropriate conferences" and "showcase product at such conferences as may be reasonably requested by" BTI through at least Defendant's actions and/or intentional failures to act in advance of the 2025 Accreditcon show.

63.     BTI was damaged by the aforementioned breaches in an amount to be proven at trial, including for compensatory, consequential, and special damages.

**COUNT III**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

64.     BTI realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

65.     BTI and Defendant entered into the valid and enforceable Distribution Agreement governed by Ohio law that imposed mutual duties and obligations.

66.     Under Ohio law, every contract includes an implied covenant of good faith and fair dealing, which obligates each party to act honestly and in good faith and to refrain from conduct that would deprive the other party of the benefit of the bargain.

67.     Defendant's practices, as described in this Complaint, breach the covenant of good faith and fair dealing implied in every contract under Ohio law.

68.     As a direct and proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, BTI has suffered damages in an amount to be proven at trial.

**COUNT IV**
**Misappropriation of Trade Secrets**
**(Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*)**

69.     BTI realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

70.     BTI owns and possesses certain trade secrets, as defined by 18 U.S.C. § 1839(3),  concerning its SETS/SimRescue system, including without limitation proprietary schematics, customer pricing data, marketing strategies, and other information. These trade secrets derive independent economic value from not being generally known to, and not readily ascertainable by, other persons who can obtain economic value from their disclosure or use.

71.     BTI has taken reasonable measures to maintain the secrecy of these trade secrets, including without limitation non-disclosure and confidentiality agreements, such as that set forth in the Distribution Agreement, restricted access, employee confidentiality policies, and like measures.

72.     BTI's trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce, within the meaning of 18 U.S.C. § 1836(b)(1), namely, BTI's SETS/SimRescue system.

73.    Without BTI's consent, Defendant misappropriated these trade secrets within the meaning of 18 U.S.C. § 1839(5) by acquiring the trade secrets knowing or having reason to know they were acquired by improper means, and/or disclosing or using the trade secrets without consent while knowing or having reason to know that the trade secrets were obtained through improper means or under circumstances giving rise to a duty to maintain secrecy or limit their use.

74.    As a direct and proximate result of Defendant's misappropriation, BTI has suffered and will continue to suffer actual losses, and Defendant has been unjustly enriched, in amounts to be proven at trial. Unless enjoined, Defendant's conduct will cause irreparable injury for which BTI has no adequate remedy at law.

75.    Pursuant to 18 U.S.C. § 1836(b)(3), BTI is entitled to: injunctive relief to prevent actual or threatened misappropriation; an award of damages for actual loss and any unjust enrichment not addressed in computing actual loss; in the alternative, a reasonable royalty; exemplary damages of up to two times the amount of damages for willful and malicious misappropriation; and an award of reasonable attorneys' fees for willful and malicious misappropriation.

**COUNT IV**
**Misappropriation of Trade Secrets**
**(Michigan Uniform Trade Secrets Act, MCL 445.1901 *et seq.*)**

76.    BTI realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

77.    BTI owns and possesses certain trade secrets, as defined by MCL 445.1902(d),  concerning its SETS/SimRescue system, including without limitation proprietary schematics, customer pricing data, marketing strategies, and other information. These trade secrets derive independent economic value from not being generally known to, and not readily ascertainable by, others who can obtain economic value from their disclosure or use.

78.    BTI has taken reasonable measures to maintain the secrecy of these trade secrets, including without limitation non-disclosure and confidentiality agreements, such as that set forth in the Distribution Agreement, restricted access, employee confidentiality agreements, and like measures.

79.    Without BTI's consent, Defendant misappropriated these trade secrets within the meaning of MCL 445.1902(b) by acquiring the trade secrets knowing or having reason to know they were acquired by improper means, and/or disclosing or using the trade secrets without consent while knowing or having reason to know that

the trade secrets were obtained through improper means or under circumstances giving rise to a duty to maintain secrecy or limit their use.

80.    As a direct and proximate result of Defendant's misappropriation, BTI has suffered and will continue to suffer actual losses, and Defendant has been unjustly enriched, in amounts to be proven at trial. Unless enjoined, Defendant's conduct will cause irreparable injury for which BTI has no adequate remedy at law.

81.    Pursuant to MCL 445.1904 and 445.1905, BTI is entitled to: injunctive relief to prevent actual or threatened misappropriation; an award of damages for actual loss and any unjust enrichment not addressed in computing actual loss; in the alternative, a reasonable royalty; exemplary damages of up to twice the amount of actual damages for willful and malicious misappropriation; and an award of reasonable attorneys' fees for willful and malicious misappropriation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff BreakThrough Innovations LLC prays for judgment against Defendant DiaMedical USA Equipment, LLC, as follows:

1.    Finding that Defendant has infringed, contributorily infringed, and/or induced infringement of the '767 Patent all in violation of 35 U.S.C. § 271;

2.    Preliminarily and permanently enjoining Defendant, its officers, agents, servants, representatives, and employees, and all persons acting in concert with

23

them, and each of them, from infringing, contributorily infringing, or inducing others to infringe the '767 Patent;

3.    Awarding BTI damages, including lost profits and/or reasonable royalties, adequate to compensate for Defendant's infringement of the '767 Patent pursuant to 35 U.S.C. § 284;

4.    Finding that Defendant's infringement was and has been knowing and willful;

5.    Increasing the damages for infringement of the '767 Patent to three times the damages amount found by the jury or assessed by the Court pursuant to 35 U.S.C. § 284;

6.    Declaring this case to be an exceptional case and awarding BTI its attorneys' fees pursuant to 35 U.S.C. § 285;

7.    Awarding BTI costs and prejudgment interest pursuant to 35 U.S.C. § 284;

8.    Finding that Defendant breached the Distribution Agreement;

9.    Finding that Defendant's breaches of the Distribution Agreement were knowing, intentional, and willful, and constitute willful and wanton misconduct, which under Ohio law renders any limitation of liability in the Distribution Agreement unenforceable;

10.     Finding that Defendant breached the implied covenant of good faith and fair dealing;

11.     Awarding BTI compensatory damages in an amount to be determined at trial, representing BTI's full expectation damages, including without limitation lost profits and all other losses proximately caused by Defendant's breach of contract;

12.     Awarding BTI consequential and incidental damages recoverable under Ohio law, including without limitation additional costs and expenses BTI incurred as a direct and foreseeable result of the breach;

13.     Awarding BTI pre-judgment interest from the date of breach through the date of judgment, and post-judgment interest thereafter, as provided by Ohio Rev. Code §§ 1343.03 and 1343.03(A) or any other applicable statute;

14.     Awarding BTI reasonable attorneys' fees, expert fees, and litigation costs to the extent allowed by contract, statute, or other applicable law;

15.     Awarding BTI all measures of damages, including without limitation compensatory, consequential, special, and/or enhanced damages against Defendant in an amount to be proven at trial attributable to Defendant's infringement, breaches of contract and covenant of good faith and fair dealing, and misappropriation of trade secrets under federal and state law;

16.     Entering a permanent injunction enjoining Defendant, and all persons acting in concert with Defendant, from directly or indirectly using, disclosing, or otherwise misappropriating BTI's trade secrets, and requiring the return, destruction, or forensic deletion of all trade secret information and derivative materials in Defendant's possession, custody, or control;

17.     Entering an injunction enjoining Defendant to take affirmative actions as may be necessary to protect BTI's trade secrets from further disclosure or use, including without limitation inspection of Defendant's systems and certification of compliance;

18.     Awarding BTI compensatory damages for the actual losses it has sustained as a result of Defendant's misappropriation and for any unjust enrichment obtained by Defendant that is not included in the calculation of actual loss, all in an amount to be determined at trial;

19.     Awarding BTI, in the alternative to actual damages and unjust enrichment, a reasonable royalty for Defendant's unauthorized disclosure or use of BTI's trade secrets;

20.     Awarding BTI exemplary damages of up to two times the amount of actual damages for willful and malicious misappropriation, as authorized by 18 U.S.C. § 1836(b)(3)(C) and/or MCL 445.1904(2);

21.     Awarding BTI its attorneys' fees, expert fees, and costs of suit incurred in this action, as permitted by 18 U.S.C. § 1836(b)(3)(D) and/or MCL 445.1905 for willful and malicious misappropriation;

22.     For such other or further relief as the Court may deem just and proper.

**JURY DEMAND**

BTI hereby demands a trial by jury of all issues so triable.

Respectfully submitted, September 29, 2025

/s/Amy L. Butler
Anthony Calamunci (Mich. Bar No. P75076)
Amy L. Butler (Mich. Bar No. P80450)
FISHERBROYLES LLP
6800 W. Central Ave., Suite E
Toledo, OH 43617
Telephone: (567) 455-5257
Email:  anthony.calamunci@fisherbroyles.com
        amy.butler@fisherbroyles.com

Thomas C. Lundin Jr.
(*pro hac vice* application forthcoming)
FISHERBROYLES LLP
Mailing:  111 Favre St.
          Waveland, MS 39576
Office:  945 East Paces Ferry Rd., Suite 2000
         Atlanta, GA 30326
Telephone: (678) 778-8857
Email:  tom.lundin@fisherbroyles.com

*Attorneys for Plaintiff*
*BreakThrough Innovations, LLC*